**CURTIS, MALLET-PREVOST,**
 **COLT & MOSLE LLP**
101 Park Avenue
New York, New York  10178-0061

*Counsel to Plaintiff Lehman Brothers Holdings Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
51 Madison Avenue, 22nd Floor
New York, New York  10010

865 S. Figueroa Street, 10th Floor
Los Angeles, California  90017

*Special Counsel to Plaintiff Intervenor,*
*the Official Committee of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In re:                                                     :  Chapter 11
                                                           :  Case No.:  08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.,*      :
                                                           :
                       Debtors.                            :
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
LEHMAN BROTHERS HOLDINGS INC. and       :  Adv. Proc. No.:  10-03266 (JMP)
OFFICIAL COMMITTEE OF UNSECURED            :
CREDITORS OF LEHMAN BROTHERS               :
HOLDINGS INC.,                                             :
                                                           :
                       Plaintiff and                       :
                       Plaintiff Intervenor,               :
          v.                                               :
                                                           :
JPMORGAN CHASE BANK, N.A.,                      :
                                                           :
                       Defendant.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PLAINTIFFS' STATEMENT IN ACCORDANCE WITH CASE**
**MANAGEMENT ORDER IN RELATION TO THE**
**IMPACT OF *STERN V. MARSHALL***

## Table of Contents

Page

A. Each Count of the Amended Complaint is Susceptible to a
Ruling by This Court on the Pending Motion to Dismiss .......................................1

B. Each Count of the Amended Complaint is Susceptible to the
Issuing of a Report and Recommendation to the District Court...........................2

C. Each Count of the Amended Complaint is Susceptible
to Final Adjudication by the Bankruptcy Court ....................................................7

   1. Claims That the September Agreements Are Invalid and Unenforceable
(Counts I, V-VI, X-XI, XIV, XXI-XXII, XXXV, XLVI) ................................10

   2. Claims That the August Guaranty and the August Security
Agreement Are Invalid and Unenforceable (Counts II, VII, XII-XIII)......................13

   3. Claims That the Securities and $8.6 Billion of Cash and Money
Market Funds Transferred as Purported Collateral Are Avoidable
and Subject to Recovery Under the Bankruptcy Code (Counts III-IV,
VIII-IX, XV-XX, XXIII-XIX)..........................................................................14

   4. Unjust Enrichment and Conversion Claims
(Counts XXXVI-XXXVII, XXXIX-XL) ........................................................17

   5. Claims for Breach of the 2000 Clearance Agreement
and August Security Agreement (Counts XLI-XLIV) ....................................18

   6. Claims for Breach of the Covenant of Good Faith and Fair Dealing Under the
August Agreements and September Agreements (Counts XLV, XLVII)..................21

   7. Coercion With Respect to Demands for $8.6 Billion
of Cash and Money Market Funds (Count XLVIII) .......................................22

   8. Fraud With Respect to the Transfer of $5 Billion Cash,
and Constructive Trust (Counts XXXII, XLIX).............................................23

   9. Declaratory Judgment That JPMorgan Has No Lien or Other Security
Interest With Respect to LBHI's $6.9 Billion of Cash (Count XXXVIII).................24

   10. Claims Related to JPMorgan's Violation of the Automatic Stay
(Counts XXXIII-XXXIV)..................................................................................26

   11. Equitable Subordination (Count XXX) .............................................................27

   12. Claim for Disallowance of JPMorgan's Claims (Count XXXI) .....................28

CONCLUSION ...............................................................................................................30

<u>**Table of Authorities**</u>

**Page(s)**

**Cases**

*Badami v. Robert A. Sears Riversource Life Insur. Co. (In re AFY, Inc.)*,
   No. BK10-40875-TLS, 2011 WL 3812598 (Bankr. D. Neb. Aug. 18, 2011) ............................7

*Brook v. Ford Motor Credit Co., LLC (In re Peacock II)*,
   No. 10-ap-01199-CPM, 2011 WL 3874461 (Bankr. M.D. Fla. Sept. 2, 2011) .........................7

*Enron Corp. v. Springfield Assocs. LLC (In re Enron Corp.)*,
   No. 01-16034, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ...................................................28

*Frost, Inc. v. Miller, Canfield, Paddock & Stone P.C. (In re Frost, Inc.)*,
   145 B.R. 878 (Bankr. W.D. Mich. 1992) ................................................................................9

*Gecker v. Flynn (In re Emerald Casino, Inc.)*,
   No. 02 B 22977, 2011 WL 3799643 (Bankr. N.D. Ill. Aug. 26, 2011) ....................................5

*Germain v. Conn. Nat'l Bank*,
   988 F.2d 1323 (2d Cir. 1993) ................................................................................................9

*House of Diamonds v. Borgioni, LLC*,
   737 F. Supp. 2d 162 (S.D.N.Y. 2010) ..................................................................................21

*Hynes v. Dallas*,
   922 N.Y.S.2d 137 (2d Dep't 2011) .......................................................................................23

*In re Blixseth*,
   No. 10–00088, 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) ........................................6

*In re Jensen*,
   No. 09-14830, 2010 WL 424693 (Bankr. S.D.N.Y. Feb. 3, 2010)..........................................25

*In re Liquidation of N.Y. Sur. Co.*,
   728 N.Y.S.2d 915 (N.Y. Sup. Ct. Nassau County 2001)........................................................19

*In re LLS America, LLC*,
   No. 09-06194-PCW11, 2011 WL 4005447 (Bankr. E.D. Wash. Sept. 8, 2011)................27, 28

*In re Olde Prairie Block Owner, LLC*,
   No. 10 B 22668, 2011 WL 3792406 (Bankr. N.D. Ill. Aug. 25, 2011) ...............................6, 12

*In re Safety Harbor Resort & Spa*,
   No. 8:10-bk-25886, 2011 WL 3849639 (Bankr. M.D. Fla. Aug. 30, 2011) .......................7, 20

*In re The Leslie Fay Cos., Inc.*,
   212 B.R. 747 (Bankr. S.D.N.Y. 1997)....................................................................................3

*Kittay v. Flutie N.Y. Corp. (In re Flutie Corp.)*,
   310 B.R. 31 (Bankr. S.D.N.Y. 2004)....................................................................................18

*Koreag, Controle et Revision S.A. v. Refco F/X Associates, Inc. (In re Koreag, Controle et
   Revision S.A.)*,
   961 F.2d 341 (2d Cir. 1992) ...........................................................................................23, 24

*Leslie Fay Cos., Inc. v. Falbaum (In re Leslie Fay Cos.)*,
No. 97 Civ. 2244, 1997 WL 555607 (S.D.N.Y. Sept. 4, 1997).....................................9

*Lubow Machine Co., Inc. v. Bayshore Wine Prods. Corp. (In re Bayshore Wine Prods. Corp.)*,
209 F.3d 100 (2d Cir. 2000) ............................................................................................2

*McClelland v. Braverman Kaskey & Caprara, P.C. (In re McClelland)*,
332 B.R. 90 (Bankr. S.D.N.Y. 2005).................................................................................9

*Michigan State Housing Dev. Auth. v. Lehman Bros. Holdings Inc.*,
11-cv-3392 (No. 14) (S.D.N.Y. Sept. 14, 2011)..............................................................2

*Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*,
376 B.R. 442 (Bankr. S.D.N.Y. 2007).............................................................................16

*Official Comm. of Unsecured Creditors of Operation Open City, Inc. v. N.Y. State Dept. of State (In re Operation Open City, Inc.)*,
148 B.R. 184 (Bankr. S.D.N.Y. 1992).......................................................................25, 26

*Ostrander v. Surprise (In re Surprise)*,
443 B.R. 258 (Bankr. D. Mass. 2011) ..............................................................................3

*Pacor v. Higgins*,
743 F.2d 984 (3d Cir. 1984) .............................................................................................4

*Paloian v. American Express Co. (In re Canopy Financial, Inc.)*,
No. 09 B 44943, 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011) .........................................7

*Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*,
219 B.R. 363 (Bankr. S.D.N.Y. 1998)...............................................................................5

*Stern v. Marshall*,
131 S. Ct. 2594 (2011)............................................................................................ passim

*The Fairchild Liquidating Trust v. State of New York (In re The Fairchild Corp.)*,
452 B.R. 525 (Bankr. D. Del. 2011)...............................................................................2, 3

*Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*,
278 B.R. 42 (Bankr. D. Del. 2002)....................................................................................5

*United Security & Commc'ns , Inc. v. Rite Aid Corp. (In re United Security & Commc'ns , Inc.)*,
93 B.R. 945 (Bankr. S.D. Ohio 1988) ...............................................................................5

*Urban Box Office Network, Inc. v. Interfase Mgrs., LP (In re Urban Box Office Network, Inc.)*,
No. 01-8854, 2003 WL 22971510 (S.D.N.Y. Dec. 18, 2003)..........................................4

## Statutes

11 U.S.C. § 502(b)(1) ............................................................................................ passim

11 U.S.C. § 502(d) ...................................................................................................28, 29

11 U.S.C. § 506(a)(1) ......................................................................................................14

11 U.S.C. § 506(d) ..........................................................................................................28

11 U.S.C. § 510(c) ..................................................................................................................27

11 U.S.C. § 542 ........................................................................................................15, 26, 28

11 U.S.C. § 544 ........................................................................................................10, 13, 14

11 U.S.C. § 547 ..............................................................................................................10, 15

11 U.S.C. § 548 ........................................................................................................10, 13, 14

11 U.S.C. § 550 ........................................................................................................14, 15, 28

11 U.S.C. § 553 ..................................................................................................................28

11 U.S.C. § 553(a)(3) ..........................................................................................................15

11 U.S.C. § 553(b) ..............................................................................................................15

28 U.S.C. § 1334 ..............................................................................................................3, 4

28 U.S.C. § 1334(a) ..............................................................................................................3

28 U.S.C. § 157 ................................................................................................................3, 4

28 U.S.C. § 157(a) ................................................................................................................3

28 U.S.C. § 157(b) ........................................................................................................5, 7, 28

28 U.S.C. § 157(b)(2) ......................................................................................................5, 7

28 U.S.C. § 157(b)(2)(C) ..................................................................................................5, 6

28 U.S.C. § 157(c)(1) ....................................................................................................2, 4, 6

28 U.S.C. § 158 ....................................................................................................................1

## Other Authorities

28 WILLISTON ON CONTRACTS § 71:62 ..........................................................................22

H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977) ....................................................28

Plaintiffs Lehman Brothers Holdings Inc. ("LBHI") and the Official Committee of Unsecured Creditors of LBHI (the "Committee"; together with LBHI, "Plaintiffs"), hereby submit this statement in accordance with the *Case Management Order in Relation to the Impact of Stern v. Marshall* [Docket No. 93] (the "Case Management Order"). Paragraph 4 of the Case Management Order directed the parties to address:

> (i) why each count of the Amended Complaint either is or is not susceptible to a ruling by the bankruptcy court with respect to the pending motion to dismiss;
>
> (ii) why each count of the Amended Complaint either is or is not susceptible to final adjudication by the bankruptcy court; and
>
> (iii) why each count of the Amended Complaint either is or is not susceptible to the issuing of a report and recommendation to the district court regarding each such count.

(Case Management Order ¶ 4).

The questions presented in Paragraph 4(i) and 4(iii) of the Case Management Order are addressed categorically in Parts A and B below, and the question presented in Paragraph 4(ii) is analyzed on a count-by-count basis in Part C. For ease of reference, a supplemental appendix is also attached hereto setting forth a summary of the count-by-count analysis in chart form.[1]

## A. Each Count of the Amended Complaint is Susceptible to a Ruling by This Court on the Pending Motion to Dismiss

As explained in Part B below, *Stern v. Marshall*, 131 S. Ct. 2594 (2011), does not impact the subject matter jurisdiction of this Court or its ability to hear a case in any way. *Stern* merely creates a line of demarcation between actions in which a bankruptcy court can issue a final judgment subject to review by a district court under 28 U.S.C. § 158 and actions in which a

---

[1] As discussed in Plaintiffs' submission to the Court dated August 5, 2011 at pages 18-19, JPMorgan's conduct during the pendency of the Adversary Proceeding demonstrates that it has also impliedly consented to the complete adjudication by this Court of all counts contained within the Amended Complaint.

bankruptcy court instead issues a report and recommendation to the district court subject to *de novo* review under 28 U.S.C. § 157(c)(1).

This Court has the ability to *hear* this entire Adversary Proceeding; therefore, with respect to the question presented in Paragraph 4(i), as to whether this Court can issue a ruling on the pending motions to dismiss, *Stern* has no impact. Furthermore, whether this Court's decision on the motions to dismiss are characterized as a "final" judgment or a report and recommendation has no practical effect, because in ruling on the motions to dismiss this Court will only be making conclusions of law. Therefore, regardless of whether the bankruptcy court's ruling is final or a recommendation to the district court, the scope of review for the district court will be *de novo*. *See* 28 U.S.C. § 157(c)(1) (proposed findings of fact and conclusions of law in related proceedings are reviewed *de novo*); *Lubow Machine Co., Inc. v. Bayshore Wine Prods. Corp. (In re Bayshore Wire Prods. Corp.)*, 209 F.3d 100, 103 (2d Cir. 2000); *see also* Transcript of Oral Argument at 61, *Michigan State Housing Dev. Auth. v. Lehman Bros. Holdings Inc.*, 11-cv-3392 (No. 14) (S.D.N.Y. Sept. 14, 2011).

**B.      Each Count of the Amended Complaint is Susceptible to the Issuing of a Report and Recommendation to the District Court**

As set forth in Part C below, Plaintiffs' position is that this Court can render a final judgment on each of the counts in the Amended Complaint. However, even if it were to be determined that some of the counts are not "core" as formulated by *Stern*, nothing in that decision impacts the ability of the bankruptcy court from treating those counts as "related to" the bankruptcy and thus hearing the counts and issuing a report and recommendation with respect to them. *Stern* did not create any issue with respect to the subject matter jurisdiction of bankruptcy courts. *See The Fairchild Liquidating Trust v. State of New York (In re The Fairchild Corp.)*,

452 B.R. 525, 530 n.14 (Bankr. D. Del. 2011) ("*Stern v. Marshall* is not a case about subject matter jurisdiction. Rather it addresses the power of the bankruptcy court to enter final orders, *assuming that subject matter jurisdiction exists*.") (emphasis in original). The subject matter jurisdiction of the bankruptcy courts is derived by statute from 28 U.S.C. § 1334. *See Ostrander v. Surprise (In re Surprise)*, 443 B.R. 258, 261 (Bankr. D. Mass. 2011). Section 1334 provides, in pertinent part:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(a), (b).

Given this grant of jurisdiction, 28 U.S.C. § 157 governs the division of labor between the bankruptcy court and the district court to finally adjudicate core and non-core proceedings. Section 157(a) provides, in pertinent part:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a).[2]

Thus, bankruptcy judges may hear all core proceedings arising under title 11 or arising in a case under title 11, as well as non-core proceedings that are "related to" a case under title 11. *Id.*; *see also In re The Leslie Fay Cos., Inc.*, 212 B.R. 747, 773 (Bankr. S.D.N.Y. 1997)

---

[2] "Pursuant to Section 157(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district." Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

(bankruptcy courts retain jurisdiction over non-core matters). Because *Stern* only discusses 28 U.S.C. § 157 and does not implicate 28 U.S.C § 1334, there is no reason why this Court would lack authority to hear and make recommendations on all counts in the Amended Complaint so long as all counts in the Amended Complaint are core or "related to" proceedings.

The "core" nature of the counts in the Amended Complaint is demonstrated in Section C, *infra*. However, at the very least, each count in the Amended Complaint is a "related to" proceeding for which proposed findings can be entered under section 157(c). *See* 11 § U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court . . . ."). A civil proceeding is "related to" a case under title 11 if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). The outcome of the Amended Complaint certainly has an effect on LBHI's bankruptcy estate because it is directly related to the amount of assets that will be available for distribution to creditors. *See Urban Box Office Network, Inc. v. Interfase Mgrs., LP (In re Urban Box Office Network, Inc.)*, No. 01-8854, 2003 WL 22971510, at *2 (S.D.N.Y. Dec. 18, 2003). Therefore, *Stern* does not affect the ability of this Court to hear all counts in the Amended Complaint and, at the very least, submit proposed findings and conclusions pursuant to section 157(c).

The majority opinion in *Stern* further confirmed that its decision did not affect the ability of the bankruptcy court to hear, and issue reports and recommendations with respect to, claims that meet the statutory definition of a "core" proceeding, even if they do not meet the test for issuing final judgments articulated in that decision. Thus the Court stated:

> Pierce has not argued that bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them. *We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute*; we agree with the United States that the question presented here is a "narrow" one.

*Stern*, 131 S.Ct. at 2620 (emphasis supplied) (internal citations committed).

*Stern* thus did not create a new category of claims that a bankruptcy court lacks authority to hear and decide in the first instance. In fact, prior to *Stern*, courts have recognized that when a proceeding falls within the literal definition of core under § 157(b)(2) but is nonetheless constitutionally outside of the core jurisdiction of the bankruptcy court, the bankruptcy court retains the ability to hear the case and to issue a report and recommendation to the district court. *See Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.)*, 219 B.R. 363, 372 (Bankr. S.D.N.Y. 1998) (finding that proceeding, which arguably fell under §157(b)'s catchall provisions, was nevertheless non-core and subject to the bankruptcy court's "related to" jurisdiction); *see also Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines, Inc.)*, 278 B.R. 42, 48-50 (Bankr. D. Del. 2002) (same); *United Security & Commc'ns , Inc. v. Rite Aid Corp. (In re United Security & Commc'ns , Inc.)*, 93 B.R. 945, 957-59 (Bankr. S.D. Ohio 1988) (same). Just as courts have recognized that these claims can be within the subject matter jurisdiction of the bankruptcy court, so too can counterclaims that fall within the literal language of 28 U.S.C. § 157(b)(2)(C) but do not meet the *Stern* test.

The Bankruptcy Court for the Northern District of Illinois also recently clarified that *Stern* did not create a new class of claims outside the subject matter jurisdiction of the bankruptcy courts. *See Gecker v. Flynn (In re Emerald Casino, Inc.)*, Case No. 02 B 22977,

2011 WL 3799643 (Bankr. N.D. Ill. Aug. 26, 2011). In *Emerald*, the bankruptcy court explained

as follows:

> The defendants make a statutory argument, based on *Stern*, that would eliminate all bankruptcy court activity in this proceeding. The argument runs this way: first, as *Stern* recognized, § 157(b)(2)(C) defines as "core" any claims by the estate against a creditor who has filed a claim against the estate; second, § 157(c)(1) only applies related-to jurisdiction to a proceeding "that is not a core proceeding; "and so, the argument concludes, a § 157(b)(2)(C) counterclaim – being statutorily core – cannot be within related-to jurisdiction. There appears to be at least some judicial support for this argument. *See In re Blixseth*, 2011 WL 3274042, at *12 (Bankr. D. Mont. Aug. 1, 2011).
>
> This argument, however, ignores the remedy flowing from *Stern's* holding that the statute unconstitutionally allows judgments to be entered by a non-Article III court. As noted in the text above, *Stern* states that the remedy for this constitutional violation is to remove counterclaims covered by the decision from core jurisdiction. With this remedy, the counterclaim is no longer covered by the statutory definition of "core." As a result, to the extent that the estate's claims are not subject to a final judgment by the bankruptcy court, they are non-core, and fully within the definition of related-to jurisdiction in § 157(c)(1).

*Id.* at *1 n.1 (internal citations omitted); *see also In re Olde Prairie Block Owner, LLC*, Case No.

10 B 22668, 2011 WL 3792406, at *3 (Bankr. N.D. Ill. Aug. 25, 2011) (holding that

counterclaims "of [the] nature [at issue in *Stern*] are instead to be treated as non-core

proceedings . . .").

**C.    Each Count of the Amended Complaint is Susceptible
to Final Adjudication by the Bankruptcy Court**

The question presented in Paragraph 4(ii) of the Case Management Order is whether or

not each count in the Amended Complaint is susceptible to final adjudication by the bankruptcy

court.[3] As set forth in detail below, all of the counts in the Amended Complaint are integral to

the bankruptcy case and all of the counts can be, and indeed must be, resolved in conjunction

with ruling on JPMorgan's proof of claim.

On April 1, 2010, JPMorgan filed proof of claim number 66462 (the "Proof of Claim")

against LBHI amending proof of claim number 27198 filed by JPMorgan on September 22,

2009.  In the Proof of Claim, JPMorgan alleges that LBHI is liable for the claims of JPMorgan

against all of LBHI's "direct and indirect subsidiaries and their respective subsidiaries" based

upon the Guaranty dated as of September 9, 2008 (the "September Guaranty") and the Security

Agreement dated as of September 9, 2008 (the "September Security Agreement"; and together

with the September Guaranty, the Account Control Agreement and the Amendment to the

Clearance Agreement dated September 9, 2008, the "September Agreements").  Specifically, the

Proof of Claim provides as follows:

---

[3] It should be noted that, as set forth in the attached appendix, each and every count in the Amended Complaint is a "core" proceeding under a subsection of 28 U.S.C. § 157(b) other than the subsection related to counterclaims that was held unconstitutional in *Stern*.  This is significant because a majority of courts have held that *Stern's* narrow holding only applies to counterclaims by the estate against persons filing claims against the estate – it has no effect on counts that are statutorily "core" pursuant to other subsections of section 157(b).  *Brook v. Ford Motor Credit Co., LLC (In re Peacock II)*, No. 10-ap-01199-CPM, 2011 WL 3874461, at *1 (Bankr. M.D. Fla. Sept. 2, 2011) ("The narrow holding in *Stern . . . does not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. § 157(b)(2)."); *In re Safety Harbor Resort & Spa*, No. 8:10-bk-25886, 2011 WL 3849639, at *10 (Bankr. M.D. Fla. Aug. 30, 2011) ("nothing in the Supreme Court's opinion [in *Stern*] actually limits a bankruptcy court's authority to adjudicate the other 'core proceedings' identified in section 157(b)(2)"); *Badami v. Robert A. Sears Riversource Life Insur. Co. (In re AFY, Inc.)*, No. BK10-40875-TLS, 2011 WL 3812598, at *1 (Bankr. D. Neb. Aug. 18, 2011) (observing that the Stern Court "made a point of noting that Congress exceeded its constitutional authority only in one isolated respect. In particular, no other subsection of 28 U.S.C. § 157(b)(2) was found to be unconstitutional") (quotations omitted).  *But see Paloian v. American Express Co. (In re Canopy Financial, Inc.)*, No. 09 B 44943, 2011 WL 3911082, at *2 (N.D. Ill. Sept. 1, 2011).

> LBHI owes each Claimant the amount of (a) all of the Claims of
> such Claimant against all of the Debtors and (b) all of the Non-
> Debtor Claims of such Claimant against all of the Other Lehman
> Obligors. Pursuant to the Guaranty dated as of September 9, 2008
> (the "Second LBHI Guaranty") made by LBHI, LBHI guaranteed
> all of the obligations of itself and all of its direct and indirect
> subsidiaries and their respective successors to JPMCB and all of its
> affiliates, subsidiaries, successors and assigns. . . . LBHI's
> obligations under the Second LBHI Guaranty are secured pursuant
> to the Security Agreement dated as of September 9, 2008.

(Proof of Claim at 3).

The Proof of Claim also alleges that LBHI is liable for claims owing by LBI and certain

other defined subsidiaries under the Clearance Agreement dated June 15, 2000 (the "Clearance

Agreement") pursuant to a Guaranty executed by LBHI dated as of August 26, 2008 (the

"August Guaranty"), and that those obligations are secured pursuant to a Security Agreement

executed by LBHI dated as of August 26, 2008 (the "August Security Agreement" and together

with the August Guaranty, the "August Agreements"). The Proof of Claim provides:

> LBHI owes JPMCB the amount of all of the Claims owing by LBI
> under the Clearance Agreement . . . Pursuant to the Guaranty dated
> as of August 26, 2008 (the "First LBHI Guaranty") made by LBHI,
> LBHI guaranteed all of the obligations of LBI and other named
> subsidiaries of LBHI to JPMCB under the Clearance Agreement
> referred to in the Proof of Claim filed by JPMCB against LBI . . .
> The amount of LBHI's liability under the First LBHI Guaranty is
> limited as set forth therein. LBHI's obligations under the First
> LBHI Guaranty are secured pursuant to the Security Agreement
> dated as of August 26, 2008 (the "First LBHI Security
> Agreement") executed by LBHI.

(Proof of Claim at 4-5).

Additionally, the Proof of Claim alleges that JPMorgan's claims against LBHI are

secured by the collateral at issue in the Amended Complaint, stating:

**Secured Claim.** In addition to the collateral applied against Claims as described above, JPMCB currently holds (a) unliquidated securities collateral posted by LBHI under the [Guaranty dated August 26, 2008], the details of which have been provided to LBHI and the value of which is not currently determinable, *plus* (b) approximately $6,879,994,552 as of August 31, 2009 of unapplied cash and money market collateral (including amounts posted by LBHI under the Second LBHI Security Agreement and interest thereon, and principal and interest on securities posted by LBHI under the [August Security Agreement] . . .

(Proof of Claim at 39-40).

As explained in detail below, every count in the Amended Complaint challenges one or more of the foregoing aspects of JPMorgan's Proof of Claim, including: (i) the validity and enforceability of the September Agreements; (ii) the validity and enforceability of the August Guaranty and August Security Agreement; or (iii) JPMorgan's asserted right to apply collateral withheld under those agreements to its alleged claims against LBHI. The fact that these challenges appear in the context of an adversary proceeding, as opposed to a claim objection, is legally irrelevant.[4] They must each be resolved in the process of ruling on JPMorgan's Proof of Claim. *See, e.g.*, 11 U.S.C. § 502(b)(1) ("if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim . . . and shall allow such claim in such amount, except to the extent that – (1) such claim is unenforceable against the debtor and

---

[4] As discussed in Plaintiffs' submission to the Court dated August 5, 2011 at page 15 and footnote 10, pursuant to Bankruptcy Rule 7001, Plaintiffs were procedurally required to institute an adversary proceeding to challenge the validity, priority or extent of JPMorgan's liens under the September Security Agreement and August Security Agreement. In any event, an adversary proceeding is essentially a claim objection if the determination of the claims asserted in the adversary proceeding results in the allowance or disallowance, in whole or in part, of the proof of claim. *See McClelland v. Braverman Kaskey & Caprara, P.C. (In re McClelland)*, 332 B.R. 90, 97-98 (Bankr. S.D.N.Y. 2005); *Leslie Fay Cos., Inc. v. Falbaum (In re Leslie Fay Cos. Inc.)*, No. 97 Civ. 2244, 1997 WL 555607, at *2 (S.D.N.Y. Sept. 4, 1997) (citing *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 & n.9 (2d Cir. 1993)); *Frost, Inc. v. Miller, Canfield, Paddock & Stone P.C. (In re Frost, Inc.)*, 145 B.R. 878, 882 (Bankr. W.D. Mich. 1992).

property of the debtor, under any agreement or applicable law . . .").[5] Accordingly, under *Stern*, this Court has the authority to render final judgments on every count in the Amended Complaint. Against this background, each of Plaintiffs' counts is analyzed below.

### 1. Claims That the September Agreements Are Invalid and Unenforceable (Counts I, V-VI, X-XI, XIV, XXI-XXII, XXXV, XLVI)

The Amended Complaint asserts numerous counts seeking to invalidate the September Agreements, under both bankruptcy and state law theories, as follows:

<u>Counts Arising Under the Bankruptcy Code</u>

- Count I seeks avoidance of the September Agreements as actually fraudulent conveyances under section 548 of the Bankruptcy Code (Am. Compl. ¶¶ 87-92);

- Counts V and VI set forth constructive fraudulent transfer claims, with Count V seeking to avoid all of the September Agreements and Count VI targeting the September Guaranty alone (*id.* ¶¶ 111-124), and Counts X and XI seek the same relief, respectively, under section 544 and applicable state fraudulent conveyance law (*id.* ¶¶ 154-156);

- Count XIV seeks a declaratory judgment that, as a result of the invalidity of the September Guaranty as set forth in Count VI and/or XI, the remaining September Agreements are also invalid and unenforceable (*id.* ¶¶ 168-170);

- Count XXI seeks to avoid the September Security Agreement as a preferential transfer under section 547 (*id.* ¶¶ 200-207); and

- Count XXII seeks to avoid the Account Control Agreement as a preferential transfer under section 547 (*id.* ¶¶ 208-215).

---

[5] We note that JPMorgan has asserted contingent claims for indemnity and reimbursement in its Proof of Claim, as well as counterclaims against the LBHI estate seeking indemnification and reimbursement in connection with defending against the Amended Complaint. (*See* Proof of Claim at 3-5, 38-39; *see generally* Amended Counterclaims of JPMorgan). These JPMorgan claims also cannot be resolved until all counts in the Amended Complaint are adjudicated by this Court, further anchoring adjudication of the Amended Complaint to the claims resolution process.

Counts Arising Under State or Common Law

- Count XXXV seeks a declaratory judgment that the September Agreements are invalid and unenforceable because they were the product of unlawful coercion, they lacked consideration, and they were entered into without the knowledge or authorization of the LBHI executives necessary to bind LBHI to those agreements (Am. Compl. ¶¶ 273-283); and

- Count XLVI sets forth a stand-alone unlawful coercion claim which, if established, would entitle LBHI to rescission of the September Agreements (*id.* ¶¶ 343-350).

In its Proof of Claim, JPMorgan asserts billions of dollars in claims against LBHI that purportedly arise under the September Guaranty. (Proof of Claim at 4-5). JPMorgan has already applied $1.7 billion of cash held under color of the September Security Agreement to purported claims arising under derivatives contracts with LBHI subsidiaries. *Id.* at 10-14. JPMorgan further asserts a right to the additional "approximately $6,879,994,552 . . . of unapplied cash and money market collateral" held under color of the September Security Agreement. *Id.* at 39-40. And the Proof of Claim asserts a contingent claim to the extent its alleged security interest under the September Security Agreement is deemed invalid and any of its purported claims are left unpaid, including its claim under the September Guaranty and the $1.7 billion of purported derivatives contract claims described above. *Id.* at 3-4 ("LBHI is contingently obligated to each Claimant to the extent that any payment . . . is rescinded, returned, recovered, avoided, reversed or otherwise invalidated.").

The remaining September Agreements are integral to JPMorgan's claims as well: the Account Control Agreement allegedly perfects JPMorgan's security interest in the "money market collateral" referenced above (*see* Ex. 9,[6] Account Control Agreement at 1), and the September Amendment seeks to expand the obligations subject to LBHI's guaranty by changing

_____

[6] All citations to "Ex. __" refer to exhibits to the Declaration of Amy. R. Wolf in Support of Defendant's Motion to Dismiss, filed on October 19, 2010 [Docket No. 30].

the definition of "obligations" arising under the 2000 Clearance Agreement to include *all* obligations of the relevant LBHI subsidiaries to any JPMorgan entity, regardless of the relationship (or lack thereof) of those obligations to clearance activity (*see* Ex. 6, September Amendment ¶ 1; *see also* Proof of Claim at 4-5 (asserting claim for "all of the obligations of LBI and other named subsidiaries of LBHI to JPMCB under the Clearance Agreement")).

Whether the September Agreements are invalid and unenforceable, as Plaintiffs assert in the above referenced counts, is plainly a threshold question in determining: (i) whether JPMorgan had any right to apply the $1.7 billion of LBHI cash to purported derivatives obligations (Proof of Claim at 10-14); (ii) whether any portion of JPMorgan's Proof of Claim based on the September Agreements should be allowed (*id.* at 3-4); and (iii) whether JPMorgan is entitled to secured status under those agreements, as it asserts in its Proof of Claim (*id.* at 4, 39-40). *See, e.g., Olde Prairie Block Owner*, 2011 WL 3792406, at *5 (duress claim seeking rescission of contract upon which creditor's proof of claim was based is "a core proceeding . . . that a Bankruptcy Judge may still finally adjudicate as a necessary part of the process to adjudicate [the creditor's proof of claim] itself"); *see also* 11 U.S.C. § 502(b)(1) (precluding allowance of claims where "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law . . .").

Accordingly, adjudication of Counts I, V-VI, X-XI, XIV-XXXV, and XLVI is necessary to the resolution of JPMorgan's Proof of Claim, and this Court has the authority to enter final judgments thereon.

## 2. Claims That the August Guaranty and the August Security Agreement Are Invalid and Unenforceable (Counts II, VII, XII-XIII)

Plaintiffs similarly seek avoidance of the August Guaranty and the August Security Agreement pursuant to various provisions of the Bankruptcy Code. Count II seeks avoidance of these agreements as actual fraudulent conveyances under section 548. (Am. Compl. ¶¶ 93-98). Counts VII and XII seek avoidance of the August Guaranty as constructively fraudulent under section 548 of the Bankruptcy Code, and section 544 and applicable state law, respectively. (Am. Compl. ¶¶ 125-131, 157-164). Count XIII asks the Court for a declaratory judgment that, because the August Guaranty is invalid and unenforceable pursuant to Counts VII and XII, the August Security Agreement should be deemed invalid and unenforceable as well. (Am. Compl. ¶¶ 165-167).

JPMorgan asserts billions of dollars in claims against LBHI under the August Guaranty. Specifically, the Proof of Claim alleges that "LBHI owes JPMCB the amount of all of the Claims owing by LBI under the Clearance Agreement . . . Pursuant to the Guaranty dated as of August 26, 2008." (Proof of Claim at 4-5). JPMorgan further alleges that these claims are secured pursuant to the August Security Agreement (*see id.* ("LBHI's obligations under the [August Guaranty] are secured pursuant to the Security Agreement dated as of August 26, 2008")), and JPMorgan asserts a security interest on "principal and interest on securities posted by LBHI" under that agreement (*id.* at 39-40). The Proof of Claim also asserts a contingent claim against LBHI seeking payment in the event its purported security interest under the August Security Agreement is invalidated and JPMorgan's claims arising under the August Guaranty are left unpaid. *Id.* at 5.

Whether the August Guaranty and August Security Agreement are invalid and unenforceable, as asserted in the above counts, thus presents a threshold question for

determining: (i) whether JPMorgan's claims may be allowed under the August Guaranty (Proof of Claim at 4-5); (ii) whether JPMorgan may apply collateral against those claims under the August Security Agreement (*id.* at 5, 39-40); and (iii) whether and to what extent JPMorgan's contingent deficiency claim may be allowed (*id.* at 5). *See* 11 U.S.C. § 502(b)(1); 11 U.S.C. § 506(a)(1). Accordingly, adjudication of Counts II, VII, and XII-XIII is necessary to the resolution of JPMorgan's Proof of Claim, and this Court has the authority to enter final judgments thereon.

3. **Claims That the Securities and $8.6 Billion of Cash and Money Market Funds Transferred as Purported Collateral Are Avoidable and Subject to Recovery Under the Bankruptcy Code (Counts III-IV, VIII-IX, XV-XX, XXIII-XXIX)**

Plaintiffs assert numerous claims under the Bankruptcy Code seeking to avoid and recover the transfers of securities and $8.6 billion of cash and money market funds to JPMorgan that are now at issue in JPMorgan's Proof of Claim, as follows:

- Count III seeks to avoid all of these transfers as actually fraudulent under section 548 of the Bankruptcy Code (Am. Compl. ¶¶ 99-108), and Count IV seeks the recovery of those transfers under section 550 (*id.* ¶¶ 109-110);

- Count VIII seeks to avoid all of these transfers as constructively fraudulent under section 548 (*id.* ¶¶ 132-138), and Count IX seeks their recovery under section 550 (*id.* ¶¶ 139-140);

- Count XV seeks to avoid all of these transfers under section 544 and applicable state law (*id.* ¶¶ 171-178), and Count XVI seeks their recovery under section 550 (*id.* ¶¶ 179-180);

- Count XVII seeks to avoid JPMorgan's sweep of $6.9 billion from LBHI's account at JPMorgan to JPMorgan's own general ledger account (as described in Part C(9), *infra*) (*id.* ¶¶ 181-187), and Count XVIII seeks the recovery of that avoided transfer (*id.* ¶¶ 188-189);

- Count XIX seeks to avoid the $6.9 billion funds sweep as constructively fraudulent under section 544 (*id.* ¶¶ 190-197), and Count XX seeks the recovery of that avoided transfer (*id.* ¶¶ 198-199);

- Count XXIII seeks to avoid the $8.6 billion of cash and money market fund transfers to JPMorgan as preferential transfers under section 547 (*id.* ¶¶ 216-223), and Count XXIV seeks the recovery of those avoided transfers (*id.* ¶¶ 224-225);

- Count XXV seeks the turnover of all of the securities and the $8.6 billion of cash and money market funds withheld by JPMorgan under section 542 (*id.* ¶¶ 226-231);

- Count XXVI seeks to avoid the $8.6 billion of cash and money market fund transfers to JPMorgan as being made for the improper purpose of obtaining a right to setoff under section 553(a)(3) (*id.* ¶¶ 232-237), and Count XXVII seeks the turnover of that $8.6 billion (*id.* ¶¶ 238-242);

- Count XXVIII seeks avoidance of the $8.6 billion of cash and money market fund transfers as an improvement in position under section 553(b) (*id.* ¶¶ 243-249), and Count XXIX seeks to recover those avoided transfers under section 550 (*id.* ¶¶ 250-251).

The resolution of these counts is necessary to the process of allowing or disallowing JPMorgan's Proof of Claim in several respects. First, as explained above, JPMorgan has already applied $1.7 billion of the cash at issue in these counts against purported claims arising under derivatives contracts with LBHI subsidiaries. (Proof of Claim at 10-14). In its Proof of Claim, JPMorgan asserts a contingent claim against LBHI seeking payment on these same alleged derivatives obligations, to the extent the $1.7 billion payment "is rescinded, returned, recovered, avoided, reversed or otherwise invalidated." *Id.* at 3-4. In order to determine whether this contingent claim should be allowed, the Court must first determine whether JPMorgan lacked a right to hold or apply those funds, and whether they should be turned over to the LBHI estate. *See* 11 U.S.C. § 502(b)(1). Thus, to the extent the above described accounts are directed at the $1.7 billion of cash already applied by JPMorgan, they meet the *Stern* test and this Court has authority to render a final judgment thereon.

Second, JPMorgan's Proof of Claim also asserts rights against the securities and the remaining $6.9 billion of cash and money market funds to satisfy its purported claims arising

under the August Guaranty and the September Guaranty. *Id.* at 39-40 (asserting secured status based on "(a) unliquidated securities collateral posted by LBHI under the [August Guaranty] . . . *plus* (b) approximately $6,879,994,552 . . . of unapplied cash and money market collateral."). As with the above, JPMorgan also asserts contingent claims against LBHI to the extent any of these collateral transfers are "rescinded, returned, recovered, avoided, reversed or otherwise invalidated" and any of its claims are left unpaid. *Id.* at 3-5.

If Plaintiffs establish the elements of these counts, it will result in a determination that JPMorgan is not entitled to apply the subject collateral to its claims (Proof of Claim at 3-5, 39-40), and it may result in a ruling as to the allowance of JPMorgan's contingent deficiency claim and the amount thereof (*id.* at 3-5). *See Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 465-66 (Bankr. S.D.N.Y. 2007) (disallowing setoff by creditor of the preference she received against her claim against the debtor). In fact, there can be no determination as to JPMorgan's secured status or allowance of JPMorgan's asserted contingent claim until the merits of these avoidance and turnover counts are decided. *See* 11 U.S.C. § 502(b)(1). Accordingly, adjudication of Counts III-IV, VIII-IX, XV-XX, and XXIII-XIX is necessary to the resolution of JPMorgan's Proof of Claim, and this Court has the authority to enter final judgments on those counts.

In addition, LBHI's liability under the August Guaranty is limited to the value of the cash and securities legitimately held in specified accounts subject to JPMorgan's lien. (Ex. 4, August Guaranty § 1; *see also* Opp. Brief at 84, fn. 29; Proof of Claim at 5 ("The amount of LBHI's liability under the [August Guaranty] is limited as set forth therein.")). LBHI's liability under the September Guaranty is similarly linked to the value of collateral legitimately requested and held by JPMorgan. (Ex. 7, September Guaranty § 1; *see also* Opp. Brief at 84, fn. 29; Proof of

Claim at 4 ("The amount of LBHI's liability under the [September Guaranty] is limited as set forth therein")). If the securities and $8.6 billion of cash and money market funds (or any portion thereof) are subject to avoidance and recovery, LBHI's liability under those guaranties would be commensurately reduced. A ruling on these counts is therefore also necessary to determine the allowable amount of JPMorgan's claims against LBHI arising under the August Guaranty and September Guaranty. (Proof of Claim at 3-5). For this additional and independent reason, adjudication of Counts III-IV, VIII-IX, XV-XX, and XXIII-XIX is necessary to resolve the Proof of Claim, and this Court has the authority to render final judgments on those counts.

4. **Unjust Enrichment and Conversion Claims (Counts XXXVI-XXXVII, XXXIX-XL)**

Counts XXXVI and XXXVII, for unjust enrichment and conversion, respectively, seek the return of the securities and $8.6 billion of cash and money market funds transferred to JPMorgan under color of the August Agreements and September Agreements, or damages commensurate with the value of the improperly withheld collateral. These counts are premised on the notion that the August Guaranty and August Security Agreement, as well as the September Agreements, are either invalid and unenforceable, or even if valid, they did not give JPMorgan the right to withhold that collateral from LBHI. (Am. Compl. ¶¶ 284-292). Counts XXXIX and XL, for unjust enrichment and conversion, respectively, similarly seek return of the $8.6 billion of cash and money market funds or equivalent damages. These counts are premised on the theory that either the September Agreements are invalid and unenforceable, or even if valid, none of the agreements at issue in this case gave JPMorgan the right to withhold those assets from LBHI. *Id.* ¶¶ 299-308.

As with Plaintiffs' avoidance counts discussed above, a determination on these counts is necessary to the resolution of numerous aspects of JPMorgan's Proof of Claim, including: (i) whether JPMorgan is entitled to apply any of this collateral to its claims, as JPMorgan asserts in its Proof of Claim (Proof of Claim at 3-5, 39-40); (ii) whether and to what extent this Court should allow JPMorgan's contingent claim seeking payment for deficiencies that would arise if JPMorgan is not entitled to apply LBHI collateral (*id.* at 3-5); and (iii) the extent to which this Court should allow JPMorgan's claims arising under the August Guaranty or September Guaranty (*id.* at 3-5), which link LBHI's liability to the value of collateral legitimately held by JPMorgan. *See, e.g.*, *Kittay v. Flutie N.Y. Corp. (In re Flutie Corp.)*, 310 B.R. 31, 58-59 (Bankr. S.D.N.Y. 2004). Because the adjudication of Counts XXXVI-XXXVII and XXXIX-XL is necessary to the resolution of the Proof of Claim, this Court has the authority to enter final judgments on those counts.

### 5. Claims for Breach of the 2000 Clearance Agreement and August Security Agreement (Counts XLI-XLIV)

The Amended Complaint sets forth several counts for breach of contract directed at JPMorgan's demands for and withholding of the securities and the $8.6 billion of cash and money market collateral subject to JPMorgan's Proof of Claim.

First, Counts XLI and XLIII allege that JPMorgan breached the 2000 Clearance Agreement and the August Security Agreement, respectively, by demanding and withholding the $8.6 billion of cash and money market funds during the last week of LBHI's existence. As set forth in the Amended Complaint, such collateral exceeded what was allowed under the lien provisions of the relevant agreement, and those demands were made for the improper purpose of ensuring that JPMorgan would possess LBHI assets to liquidate and apply against potential non-

clearing obligations. (Am. Compl. ¶¶ 309-316, 322-328). Indeed, JPMorgan has since applied $1.7 billion of that cash to purported obligations arising under derivatives contracts (Proof of Claim at 10-14), and has asserted a right to apply the remaining $6.9 billion of cash and money market funds against any and all claims JPMorgan may have against LBHI (*id.* at 3-5, 39-40).

Second, Counts XLII and XLIV allege that JPMorgan further breached the 2000 Clearance Agreement and the August Security Agreement, respectively, by failing to release the securities, the cash and the money market funds to LBHI, or to transfer those assets to a lien free account where they could be used by LBHI. (Am. Compl. ¶¶ 317-312, 329-333).

If Plaintiffs establish the elements of any of the above breaches of contract, it will result in a determination that JPMorgan has no right to apply the subject collateral to the obligations described in the Proof of Claim, and that the value of that collateral cannot be included in the calculation of LBHI's maximum liability under the August Guaranty or September Guaranty. *See, e.g.*, *In re Liquidation of N.Y. Sur. Co.*, 728 N.Y.S.2d 915, 916-17 (N.Y. Sup. Ct. Nassau County 2001) (ordering return of collateral that defendant improperly demanded for, and applied to, obligations other than those the parties agreed would be secured by such collateral).

Accordingly, these counts must be resolved before this Court may: (i) determine that JPMorgan is entitled to apply any of this collateral to its claims, as JPMorgan asserts in its Proof of Claim (Proof of Claim at 3-5, 39-40); (ii) allow JPMorgan's contingent deficiency claim or determine the amount thereof (*id.* at 3-5); or (iii) allow JPMorgan's claims arising under the August Guaranty or September Guaranty or determine the amounts thereof (*id.* at 3-5). Because the adjudication of Counts XLI-XLIV is necessary to the resolution of the Proof of Claim, this Court has the authority to render final judgments on these counts as well.

Note that, although Plaintiffs may be entitled to consequential damages if they prevail on Counts XLIII-XLIV (for breach of the August Security Agreements), the potential to recover such damages does not preclude the Court from entering a final order resolving those counts under *Stern*. The possibility of consequential damages that may "augment" LBHI's estate does not change the fact that the counts for which such damages are available must be resolved in order to rule on the Proof of Claim and are integral to the bankruptcy case. *Stern* reaffirms the proposition that if the *only* relationship between a debtor's cause of action and the bankruptcy estate is that success on the merits of the cause of action will augment the estate, the claim should be adjudicated in an Article III court. *Stern* did not create a blanket rule prohibiting a bankruptcy court from ever entering a final judgment that would have the effect of augmenting the bankruptcy estate so long as the cause of action being adjudicated in the bankruptcy court stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. As the United States Bankruptcy Court for the Middle District of Florida recently explained:

> the *Stern* Court borrows from *Granfinanciera's* distinction between actions that seek "to augment the bankruptcy estate" and those that seek "a pro rata share of the bankruptcy res." The Supreme Court refines this conclusion by distinguishing between proceedings that "may have *some* bearing on a bankruptcy case," such as Vickie's tortious interference claim whose *only* effect on the bankruptcy case is that it would "augment the bankruptcy estate," and those that either (1) stem from the bankruptcy itself, or (2) would necessarily be resolved in the claims allowance process.

*Safety Harbor*, 2011 WL 3849639, at *8 (citing *Stern*, 131 S.Ct. at 2618) (second emphasis supplied). Accordingly, the bankruptcy court has authority to issue a final judgment on these counts so long as they can be resolved in conjunction with ruling on the Proof of Claim, even if a potential legal consequence of those counts is some additional recovery to the estate.

**6. Claims for Breach of the Covenant of Good Faith and Fair Dealing Under the August Agreements and September Agreements (Counts XLV, XLVII)**

Counts XLV and XLVII, alleging breach of the covenant of good faith and fair dealing under the August Agreements and September Agreements, respectively, similarly target the propriety of JPMorgan's demands for and withholding of the collateral at issue in JPMorgan's Proof of Claim. As alleged in the Amended Complaint, JPMorgan breached the implied covenant of good faith inherent in those agreements by: (i) abusing its discretion to demand and withhold collateral far in excess of what was reasonably required to secure the obligations subject to those agreements; (ii) employing threats to force LBHI to comply with those improper demands; and (iii) refusing to return that collateral to LBHI when LBHI demanded its release. (Am. Compl. ¶¶ 334-342, 351-357).

If Plaintiffs establish the elements of any of these counts, it would result in a determination that JPMorgan has no right to apply collateral that it possesses by virtue of a breach of the covenant of good faith and fair dealing, or to include the value of that collateral in the calculation of LBHI's maximum liability under the August Guaranty or September Guaranty. *See, e.g., House of Diamonds v. Borgioni, LLC*, 737 F. Supp. 2d 162, 170-73 (S.D.N.Y. 2010). Although a potential legal consequence of Plaintiffs' prevailing on these counts is that Plaintiffs are also entitled to consequential damages, for the reasons explained above, that potential does not bring these claims outside of the core jurisdiction of this Court. (*See* Part (C)(5), *supra*).

As with the breach of contract claims described above, these counts must be resolved before this Court may: (i) determine that JPMorgan is entitled to apply any of this collateral to its claims, as JPMorgan asserts in its Proof of Claim (Proof of Claim at 3-5, 39-40); (ii) allow JPMorgan's contingent deficiency claim or determine the amount thereof (*id.* at 3-5); or (iii) allow JPMorgan's claims arising under the August Guaranty or September Guaranty or

determine the amounts thereof (*id.* at 3-5). Because the adjudication of Counts XLV and XLVII is necessary to the resolution of the Proof of Claim, this Court has the authority to render final judgments on those counts.

### 7. Coercion With Respect to Demands for $8.6 Billion of Cash and Money Market Funds (Count XLVIII)

Count XLVIII alleges that JPMorgan used unlawful threats to coerce LBHI into transferring the $8.6 billion in cash and money market funds to JPMorgan during LBHI's last week of existence. (Am. Compl. ¶¶ 358-363). As explained above, JPMorgan has already applied $1.7 billion of this cash to pay itself for alleged derivatives obligations (Proof of Claim at 10-14), and JPMorgan further asserts a right to apply the remaining $6.9 billion of collateral to purported claims arising under the August Guaranty or the September Guaranty (*id.* at 3-5, 39-40).

If Plaintiffs establish the elements of this count, it will result in a determination that JPMorgan has no right to apply any of the $8.6 billion to the claims asserted in its Proof of Claim, or to include the value of that collateral for purposes of calculating LBHI's maximum liability under the August Guaranty or September Guaranty. *See* 28 WILLISTON ON CONTRACTS § 71:62 ("One induced to enter into a transaction by undue influence or duress has the same power of avoidance and the same remedies and defenses that one has in the case of fraud or mistake.").

Accordingly, this count must also be resolved before this Court may: (i) determine that JPMorgan is entitled to apply any portion of the $8.6 billion of collateral to its claims, as JPMorgan asserts in its Proof of Claim (Proof of Claim at 3-5, 39-40); (ii) allow JPMorgan's contingent deficiency claim or determine the amount thereof (*id.* at 3-5); or (iii) allow

JPMorgan's claims arising under the August Guaranty or September Guaranty or determine the amounts thereof (*id.* at 3-5). The adjudication of Count XLVIII is therefore necessary to resolve the Proof of Claim, and this Court has the authority to render a final judgment thereon.

### 8. Fraud With Respect to the Transfer of $5 Billion Cash, and Constructive Trust (Counts XXXII, XLIX)

Count XLIX alleges that LBHI was fraudulently induced to transfer what was essentially its last $5 billion in cash to JPMorgan on the final business day before LBHI filed for bankruptcy. (Am. Compl. ¶¶ 364-369). Count XXXII seeks the imposition of a constructive trust and turnover with respect to that $5 billion, because of the misrepresentations and other misconduct employed by JPMorgan to acquire those funds. *Id.* ¶¶ 259-265.

The $5 billion of cash at issue in these counts is the same cash over which JPMorgan asserts a security interest and a right of application with respect to its claims set forth in its Proof of Claim (Proof of Claim at 3-5, 39-40), and a portion of the $5 billion may also have been used by JPMorgan to pay itself on purported derivatives claims (Proof of Claim at 10-14). It is hornbook law that JPMorgan may not use any of the $5 billion to pay itself if those funds were acquired through fraud, nor could the $5 billion be included in the calculation of LBHI's maximum liability under the August Guaranty or September Guaranty. *See Hynes v. Dallas*, 922 N.Y.S.2d 137, 139 (2d Dep't 2011) ("[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity, or to acquire property by his own crime") (citation omitted).

Similarly, if this Court determines that a constructive trust and turnover of the $5 billion is appropriate, those funds should not be available for use by JPMorgan. *See Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d

341, 354 (2d Cir. 1992) ("[T]he purpose of the constructive trust is prevention of unjust enrichment . . . . What is required, generally [with respect to unjust enrichment], is that a party hold property under such circumstances that in equity and good conscience he ought not to retain it") (quotation and citation omitted).

Accordingly, as with the above counts, resolution of Counts XXXII and XLIX is necessary before this Court may: (i) determine that JPMorgan may apply the $5 billion to its claims, as JPMorgan asserts in its Proof of Claim (Proof of Claim 3-5, 39-40); (ii) allow the contingent deficiency claim asserted by JPMorgan or determine the amount thereof (*id.* at 3-5); or (iii) allow JPMorgan's claims arising under the August Guaranty or September Guaranty or determine the amount thereof (*id.* at 3-5). Because adjudication of Counts XXXII and XLIX is necessary to resolve the Proof of Claim, this Court has the authority to render final judgments on those counts.[7]

### 9. Declaratory Judgment That JPMorgan Has No Lien or Other Security Interest With Respect to LBHI's $6.9 Billion of Cash (Count XXXVIII)

Count XXXVIII seeks a declaratory judgment that JPMorgan has no lien over the $6.9 billion of LBHI cash that was deposited at JPMorgan in response to its demands for collateral in the week prior to LBHI's bankruptcy. As explained in the Amended Complaint and Plaintiffs' Opposition to JPMorgan's Motion to Dismiss, JPMorgan secretly swept those funds out of LBHI's account and into its own general ledger account immediately upon deposit. Under the terms of both the August Security Agreement and the September Security Agreement,

---

[7] Although Plaintiffs may be entitled to additional damages resulting from JPMorgan's fraud, for the reasons discussed above in the context of Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims, the potential for such damages does not remove Count XLIX from this Court's core jurisdiction. (*See* Part C(5) & (9), *supra*).

JPMorgan's action resulted in the loss of any lien or other security interest it may have had with respect to those funds. (Am. Compl. ¶¶ 293-298; Opp. Brief at 81-93).

As with the above counts, the resolution of this declaratory judgment count is also necessary to a ruling on JPMorgan's Proof of Claim. As described above, JPMorgan has already applied $1.7 billion of this deposit against purported derivatives contract claims (Proof of Claim at 10-14), and asserts a contingent deficiency claim against LBHI in the event the $1.7 billion payment "is rescinded, returned, recovered, avoided, reversed or otherwise invalidated." *Id.* at 3-4. In order to determine whether this contingent claim should be allowed, this Court must first determine whether, as Plaintiffs assert in Count XXXVIII, JPMorgan had any right to hold or apply those funds. *See Official Comm. of Unsecured Creditors of Operation Open City, Inc. v. N.Y. State Dept. of State (In re Operation Open City, Inc.)*, 148 B.R. 184, 194 (Bankr. S.D.N.Y. 1992) (requiring creditor who engaged in wrongful postpetition setoff to return the subject funds to the debtor).

JPMorgan also asserts rights under both the August Security Agreement and the September Security Agreement to apply the remaining $5.2 billion of cash to its claims against LBHI that purportedly arise under the August Guaranty and the September Guaranty, respectively. (Proof of Claim at 39-40 ("JPMCB currently holds . . . approximately $6,879,994,552 . . . of unapplied cash and money market collateral," of which $5.2 billion is the cash at issue). If, as Plaintiffs assert in Count XXXVIII, JPMorgan has no security interest in those funds under the August Security Agreement or September Security Agreement, this Court cannot allow JPMorgan to recover on this portion of its Proof of Claim as a secured creditor. *See, e.g., In re Jensen*, No. 09-14830, 2010 WL 424693, at *1-2 (Bankr. S.D.N.Y. Feb. 3, 2010). This Court is therefore authorized to render a final judgment on Count XXXVIII to the extent it

is directed at the remaining $5.2 billion, because doing so is a necessary precondition to ruling

on this portion of JPMorgan's Proof of Claim.

Finally, as described above, the August Guaranty limits LBHI's liability to JPMorgan to

the value of the cash and securities held in the accounts subject to JPMorgan's lien. As

discussed throughout, JPMorgan asserts a claim against LBHI under the August Guaranty.

(Proof of Claim at 4-5). If Plaintiffs are correct that JPMorgan has no lien over the $6.9 billion

of cash, then LBHI's liability to JPMorgan on that claim is limited to the value of the remaining

collateral (if any) legitimately held in the accounts subject to JPMorgan's lien. Resolution of

Count XXXVIII is therefore necessary for this Court to rule on the extent to which JPMorgan's

purported claims under the August Guaranty may be allowed. *See* 11 U.S.C. § 502(b)(1). For

this additional and independent reason, this Court has the authority to issue a final judgment on

Count XXXVIII in its entirety.

### 10. Claims Related to JPMorgan's Violation of the Automatic Stay (Counts XXXIII-XXXIV)

Count XXXIII seeks a judgment that JPMorgan violated the automatic stay when it

applied the $1.7 billion of LBHI cash to satisfy obligations purportedly owed to JPMorgan and

its related parties under derivatives contracts, as described above. (Am. Compl. ¶¶ 266-269).

Count XXXIV seeks the turnover of such funds under Section 542 of the Bankruptcy Code. *Id.*

¶¶ 270-272. This Court has the authority to render final judgments on both of these counts for

two independent reasons.

First, if Plaintiffs are successful in proving an automatic stay violation, JPMorgan's

purported derivatives claims that were satisfied by application of the $1.7 billion will be

reclassified as general unsecured claims. *See Operation Open City*, 148 B.R. at 194; 11 U.S.C. §

506(a). As explained above, JPMorgan's Proof of Claim seeks to recover such general unsecured claims that would arise to the extent the $1.7 billion payment "is rescinded, returned, recovered, avoided, reversed or otherwise invalidated." (Proof of Claim at 3-4). Counts XXXIII and XXXIV must therefore be resolved in order to determine the extent to which JPMorgan is entitled to recover on these contingent deficiency claims.

Second, an action for violation of the automatic stay is integrally related to the bankruptcy case and can be finally adjudicated in this Court on that basis regardless of whether it can be resolved in conjunction with ruling on a creditor's proof of claim. *Cf. In re LLS America, LLC*, Case No. 09-06194-PCW11, 2011 WL 4005447, at *3 (Bankr. E.D. Wash. Sept. 8, 2011) (holding that substantive consolidation "is a core matter [over which] the bankruptcy court has authority to enter final findings of fact and conclusions of law and judgment" because "substantive consolidation does not exist outside the context of a bankruptcy proceeding. It is only available in a bankruptcy proceeding commenced under the federal bankruptcy scheme . . . . Clearly, substantive consolidation is a core matter as it 'arises under' Title 11 or 'arises in' a case under Title 11").

### 11.     Equitable Subordination (Count XXX)

Count XXX seeks equitable subordination of JPMorgan's claims under Section 510(c) of the Bankruptcy Code based upon JPMorgan's inequitable, egregious, unconscionable and/or outrageous conduct that harmed LBHI, its employees, creditors and other stakeholders. (Am. Compl. ¶¶ 252-254).

If Plaintiffs establish the elements of this count, JPMorgan's claims as asserted in its Proof of Claim will either be disallowed in their entirety or lose their secured status by virtue of becoming subordinated to the claims of LBHI's other creditors. Resolution of this count is

therefore necessary to determine whether JPMorgan is entitled to recovery on the claims set forth in the Proof of Claim as a secured creditor. For this reason, this Court has the authority to render final judgment on Count XXX.

In any event, an action for equitable subordination is wholly derived from the Bankruptcy Code, and is therefore plainly "core" within the meaning of section 157(b). *Cf. LLS America*, 2011 WL 4005447, at *3. For this independent reason, this Court has authority to issue a final judgment on Count XXX.

### 12.    Claim for Disallowance of JPMorgan's Claims (Count XXXI)

Finally, Count XXXI seeks disallowance of JPMorgan's claims under Section 502(d) and the avoidance of liens securing JPMorgan's claims under 506(d) until JPMorgan has turned over all property transferred, or paid LBHI the value of such property, for which JPMorgan is liable under Sections 542, 550 or 553 of the Bankruptcy Code. (Am. Compl. ¶¶ 255-258). It is well established that section 502(d) reflects a Congressional policy choice to inextricably tie the recovery of avoidable transfers to the allowance or disallowance of a proof of claim. *See, e.g.*, H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977) ("Subsection (d) . . . requires disallowance of a claim of a transferee of a voidable transfer *in toto* if the transferee had not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises."); *see also Enron Corp. v. Springfield Assocs. LLC (In re Enron Corp.)*, No. 01-16034, 2006 WL 2548592, at *7 (S.D.N.Y. Sept. 5, 2006) (the purpose of Section 502(d) is to "promote a fair distribution of the estate's assets by disallowing a creditor from asserting a claim until he pays the estate what he owes"). Adjudication of Count XXXI is thus also necessary to resolution of the Proof of Claim, and the Court has the authority to issue a final judgment on this count.

JPMorgan has argued that section 502(d) is inapplicable based on the Collateral Disposition Agreement ("CDA"). (Supplemental Memorandum at 16-18). However, that assertion is contradicted by both the agreement of the parties and this Court's Order approving the CDA. The CDA was intended to provisionally allow JPMorgan to apply LBHI's cash collateral to its claims (in order to halt JPMorgan's charging of interest against those claims), and for JPMorgan to return the Lehman securities to be managed by LBHI. Both that agreement and the Order make clear that the CDA would *not* affect the parties' respective litigation positions or prejudice any claims of Plaintiffs asserted against JPMorgan. *See, e.g.*, CDA ¶ 5; CDA Order ¶ 9 (providing that Plaintiffs "expressly reserve … rights and remedies in connection with any such provisionally allowed secured or other Claim of each such JPMC entity …").

The CDA thus did not supplant the Bankruptcy Code or Plaintiffs' substantive rights thereunder, including their rights under section 502(d). As the specific provision of the CDA relied upon by JPMorgan makes clear, the CDA only affects the *timing* in which section 502(d) may be invoked: *i.e.*, Plaintiffs may seek relief under Section 502(d) if JPMorgan fails to return LBHI's fraudulently or preferentially transferred property when required to do so in accordance with section 6(b) of the CDA. Thus, Plaintiff's claim under Section 502(d) remains viable and further demonstrates the integral relationship between the claims asserted in the Amended Complaint and the claims resolution process. Even under the CDA, JPMorgan cannot recover on its claims until it turns over to LBHI those funds which are found to have been fraudulent or preferential transfers.

For all of these reasons, resolution of Count XXXI is necessary to the process of ruling on JPMorgan's Proof of Claim, and this Court has the authority to issue a final judgment on Count XXXI as well.

## CONCLUSION

For the reasons set forth above, this Court has the authority to render a final judgment on all counts in the Amended Complaint.

Dated: September 26, 2011
New York, New York

<div style="margin-left:50%">

**CURTIS MALLET-PREVOST
COLT & MOSLE LLP**

/s/ Joseph D. Pizzurro
Joseph D. Pizzurro
L. P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney
Peter J. Behmke
Cindi Eilbott Giglio
101 Park Avenue
New York, New York  10178

*Counsel to Plaintiff Lehman Brothers
Holdings Inc.*

**QUINN EMANUEL URQUHART &
SULLIVAN LLP**

/s/ John B. Quinn
John B. Quinn
Erica Taggart
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

Andrew J. Rossman
James C. Tecce
51 Madison Avenue, 22nd Floor
New York, New York  10010

*Special Counsel to Plaintiff Intervenor, the
Official Committee of Unsecured Creditors
of Lehman Brothers Holdings Inc., et al.*

</div>

# Appendix

**COUNT BY COUNT ANALYSIS**

| Count | Challenges Validity and Enforceability of September Agreements | Challenges Validity and Enforceability of August Agreements | Challenges Secured Status of JPMorgan Claims | Seeks to Subordinate JPMorgan Claims | Applicable Subsection(s) of 28 U.S.C. § 157(b)(2) | Discussed in Brief at Page(s): |
|---|---|---|---|---|---|---|
| I | ✓ | | | | (H) & (K) | 10 – 12 |
| II | | ✓ | | | (H) & (K) | 13 – 14 |
| III | | | ✓ | | (H) & (K) | 14 – 17 |
| IV | | | ✓ | | (H) & (K) | 14 – 17 |
| V | ✓ | | | | (H) & (K) | 10 – 12 |
| VI | ✓ | | | | (H) & (K) | 10 – 12 |
| VII | | ✓ | | | (H) & (K) | 13 – 14 |
| VIII | | | ✓ | | (H) & (K) | 14 – 17 |
| IX | | | ✓ | | (H) & (K) | 14 – 17 |
| X | ✓ | | | | (H) & (K) | 10 – 12 |
| XI | ✓ | | | | (H) & (K) | 10 – 12 |
| XII | | ✓ | | | (H) & (K) | 13 – 14 |
| XIII | | ✓ | | | (K) | 13 – 14 |
| XIV | ✓ | | | | (K) | 10 – 12 |
| XV | | | ✓ | | (H) & (K) | 14 – 17 |
| XVI | | | ✓ | | (H) & (K) | 14 – 17 |
| XVII | | | ✓ | | (H) & (K) | 14 – 17 |
| XVIII | | | ✓ | | (H) & (K) | 14 – 17 |
| XIX | | | ✓ | | (H) & (K) | 14 – 17 |
| XX | | | ✓ | | (H) & (K) | 14 – 17 |
| XXI | ✓ | | | | (F) & (K) | 10 – 12 |
| XXII | ✓ | | | | (F) & (K) | 10 – 12 |
| XXIII | | | ✓ | | (F) & (K) | 14 – 17 |
| XXIV | | | ✓ | | (F) & (K) | 14 – 17 |
| XXV | | | ✓ | | (E) & (K) | 14 – 17 |
| XXVI | | | ✓ | | (K) | 14 – 17 |
| XXVII | | | ✓ | | (E) & (K) | 14 – 17 |
| XXVIII | | | ✓ | | (K) | 14 – 17 |
| XXIX | | | ✓ | | (K) | 14 – 17 |
| XXX | | | | ✓ | (B) & (K) | 27 – 28 |
| XXXI | | | ✓ | | (B) & (K) | 28 – 29 |
| XXXII | | | ✓ | | (E) & (K) | 23 – 24 |
| XXXIII | | | ✓ | | (K) | 26 – 27 |
| XXXIV | | | ✓ | | (E) & (K) | 26 – 27 |
| XXXV | ✓ | | | | (K) | 10 – 12 |
| XXXVI | | | ✓ | | (K) | 17 – 18 |
| XXXVII | | | ✓ | | (K) | 17 – 18 |
| XXXVIII | | | ✓ | | (K) | 24 – 26 |
| XXXIX | | | ✓ | | (K) | 17 – 18 |
| XL | | | ✓ | | (K) | 17 – 18 |

| Count | Challenges Validity and Enforceability of September Agreements | Challenges Validity and Enforceability of August Agreements | Challenges Secured Status of JPMorgan Claims | Seeks to Subordinate JPMorgan Claims | Applicable Subsection(s) of 28 U.S.C. § 157(b)(2) | Discussed in Brief at Page(s): |
|---|---|---|---|---|---|---|
| XLI | | | ✓ | | (K) | 18 – 20 |
| XLII | | | ✓ | | (K) | 18 – 20 |
| XLIII | | | ✓ | | (K) | 18 – 20 |
| XLIV | | | ✓ | | (K) | 18 – 20 |
| XLV | | | ✓ | | (K) | 21 – 22 |
| XLVI | ✓ | | ✓ | | (K) | 10 – 12 |
| XLVII | | | ✓ | | (K) | 21 – 22 |
| XLVIII | | | ✓ | | (K) | 22 – 23 |
| XLIX | | | ✓ | | (K) | 23 – 24 |