| | |
|---|---|
| **CURTIS, MALLET-PREVOST, COLT & MOSLE LLP**<br>101 Park Avenue<br>New York, New York 10178-0061 | **HEARING DATE:**<br>January 11, 2012<br>**OBJECTIONS DUE**:<br>January 5, 2012 |

*Counsel to Plaintiff Lehman Brothers Holdings Inc.*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, New York  10010

865 South Figueroa Street, 10th Floor
Los Angeles, California 90017

*Special Counsel to Plaintiff Intervenor,*
*the Official Committee of Unsecured Creditors*
*of Lehman Brothers Holdings Inc.*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------ X
In re:                                                                                  :    Chapter 11
                                                                                              :    Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.,*           :
                                                                                              :
                                       Debtors.                                     :
------------------------------------------------------------------------ X
LEHMAN BROTHERS HOLDINGS INC., and              :
OFFICIAL COMMITTEE OF UNSECURED               :
CREDITORS OF LEHMAN BROTHERS HOLDINGS :
INC.,                                                                                 :
                          Plaintiff and                                         :
                          Plaintiff Intervenor,                            :
                                                                                              :
                          -against-                                             :
                                                                                              :    Adversary Proceeding
                                                                                              :
JPMORGAN CHASE BANK, N.A.,                                  :    No.:  10-03266 (JMP)
                                                                                              :
                          Defendant.                                           :
------------------------------------------------------------------------ X

**MOTION OF PLAINTIFFS LEHMAN BROTHERS HOLDINGS INC. AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF LEHMAN BROTHERS HOLDINGS INC., ET AL.,  PURSUANT TO 11 U.S.C. § 105(a) AND THE HAGUE CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS, FOR ISSUANCE OF A LETTER OF REQUEST FOR INTERNATIONAL JUDICIAL ASSISTANCE**

1

Plaintiffs Lehman Brothers Holdings Inc. ("LBHI") and the Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of LBHI and its affiliated debtors and debtors in possession (collectively, "Plaintiffs"), hereby file this Motion, pursuant to section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1 et seq., 28 U.S.C.A. § 1781 note (hereinafter the "Hague Evidence Convention" or "Convention"), for the issuance of a Letter of Request for International Judicial Assistance in the form annexed hereto as Exhibit A (the "Letter of Request"), in duplicate and with Korean translations (attached within Exhibit A), to the National Court Administration of the Republic of Korea (the "NCA"), to compel the appearance of Mr. Min Euoo-sung ("Mr. Min"), former Chairman and CEO of Korea Development Bank ("KDB"), to testify under oath. In support of this Motion, Plaintiffs respectfully state as follows:

## I.     PRELIMINARY STATEMENT

1.     Mr. Min, a non-party to this case, is a Korean national currently residing in the Republic of Korea. Because he is beyond the Court's subpoena power, Plaintiffs request the Court's assistance in taking Mr. Min's deposition in Korea pursuant to Federal Rule of Civil Procedure 28(b) and the Hague Evidence Convention. Rule 28(b) permits a party to take a deposition in a foreign country "under an applicable treaty or convention; [or] under a letter of request, whether or not captioned a 'letter rogatory[.]'" Fed. R. Civ. P. 28(b)(1)(A)-(B). Because Korea has adopted reservations to the Hague Evidence Convention, Korean nationals may be deposed only pursuant to a formal Letter of Request. *See* Status Table, Republic of Korea, Declarations and Reservations, Hague Conference on Private International Law,

2

http://www.hcch.net/index_en.php?act=status.comment&csid=1057&disp=resdn (last visited Dec. 22, 2011) (noting Korea reserves application of Convention Articles 16 and 17, which permit the deposition of a voluntary foreign witness before a diplomatic officer, consular agent, or a private commissioner); *see also* South Korea Assistance, Judicial Assistance, Travel.State.Gov, http://travel.state.gov/law/judicial/judicial_4735.html#compulsioncivil (last visited Dec. 22, 2011) (explaining that due to the Republic of Korea's reservations to Articles 16 and 17, willing Korean witnesses must be deposed pursuant to a Letter of Request to the NCA and in the context of the Korean court system).  Thus, Plaintiffs request the Court to issue the attached Letter of Request to the NCA, the Central Authority for the Republic of Korea under the Convention.

  2. Plaintiffs seek to depose Mr. Min for straightforward, compelling reasons.  In 2008, Mr. Min served as Chairman and CEO of KDB, a key potential bidder for LBHI during the weeks and months leading up to its bankruptcy.  As KDB's Chairman and CEO, Mr. Min actively participated in discussions regarding a potential Lehman transaction and is uniquely qualified to testify about KDB's negotiations with, due diligence on, and ultimate conclusions about Lehman.  Mr. Min's testimony on these matters will bear directly on LBHI's insolvency and/or undercapitalization, a factor necessary to prove Plaintiffs' constructive fraudulent transfer claims.

  3. Additionally, Plaintiffs seek to gather testimony from Mr. Min about information JPMorgan may have learned from KDB during the time period when KDB was considering a Lehman transaction.  Plaintiffs allege that JPMorgan sought to represent KDB in an advisory role during its negotiations with Lehman. (Ex. B, Am. Compl. ¶ 38.)  Plaintiffs further assert that through its communications with KDB on this matter, JPMorgan learned as early as

3

September 5, 2008, before it was publicly announced, that KDB would not pursue a deal with Lehman. (*Id.*) Plaintiffs allege this insider knowledge assisted JPMorgan in requiring Plaintiffs to post additional collateral and alter their clearing relationship before LBHI filed for bankruptcy.

4. Accordingly, Mr. Min's testimony is directly relevant to Plaintiffs' allegations. A Letter of Request under the Hague Evidence Convention is the appropriate and exclusive means to obtain Mr. Min's crucial testimony. Plaintiffs respectfully request that the Court issue the attached Request.

## II.    RELIEF REQUESTED

5. Plaintiffs move, pursuant to section 105(a) of the Bankruptcy Code and the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Art. 1 et seq., 28 U.S.C. § 1781 note, for the Court to approve and issue the attached Letter of Request for International Judicial Assistance from the National Court Administration of the Republic of Korea to obtain Mr. Min Euoo-sung's testimony under oath.

## III.    ARGUMENT

6. Both the United States and the Republic of Korea are parties to the Hague Evidence Convention. The Republic of Korea acceded to the Convention on December 14, 2009. *See* Status Table, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=conventions.status&cid=82 (last visited Dec. 22, 2011). The United States accepted Korea's accession on January 8, 2010, and the Convention entered into force between the two countries on March 9, 2010. *See* Republic of Korea, Acceptances of Accessions, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=status.accept&mid=1057 (last visited Dec. 22, 2011).

7. The Hague Evidence Convention authorizes this Court to issue the attached Letter of Request. *See Societe Nationale Industrielle Aerospatiale v. United States Dist. Ct. for the Dist. of Iowa*, 482 U.S. 522, 535, 107 S. Ct. 2542, 2551 (1987) ("[A] judicial authority in one contracting state 'may' forward a letter of request to the competent authority in another contracting state for the purpose of obtaining evidence."); 28 U.S.C. § 1781 (permitting "the transmittal of a letter rogatory or request directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner" and reproducing the Hague Evidence Convention); *Restatement (Third) of Foreign Relations Law of the United States* § 474(2) ("A United States district court, in order to obtain evidence for use in a proceeding before it, may . . . issue a letter rogatory requesting a court or other appropriate authority in a foreign state to direct the taking of evidence in that state[.]").

8. The Hague Evidence Convention was intended to establish a system, based on international comity, to obtain evidence abroad in a manner "tolerable" to the state executing the request and "utilizable" in the requesting state. *See Aerospatiale*, 482 U.S. at 530; *see also Abbot Lab. v. Impax Lab., Inc.*, 2004 WL 1622223, at *2-3 (D. Del. July 15, 2004) (noting that "[t]he Hague Convention serves as an alternative or 'permissive' route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike," and authorizing letters of request for depositions of individuals located in France (citations omitted)).

9. Thus, while the party seeking evidence must make a showing that recourse to the Hague Evidence Convention is appropriate, "[t]hat burden is not great . . . since the Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention." *Metso Minerals, Inc. v. Powerscreen Int'l Dist. Ltd.*, No. CV 06-

5

1446 (ADS) (ETB), 2007 WL 1875560, at *2 (E.D.N.Y. June 25, 2007) (citations omitted) (internal quotations omitted) (authorizing issuance of letters of request for documents and depositions in Northern Ireland when, *inter alia*, documents and testimony were relevant and Hague Evidence Convention procedures were the only means by which the requested discovery could be obtained).

10. In deciding whether to issue a Letter of Request under the Hague Evidence Convention, United States courts weigh "considerations of comity, the relative interests of the parties including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats of discovery." *Id.* (citations omitted). Courts generally consider the following factors when determining whether to use Convention discovery procedures such as a Letter of Request: (1) the importance of the discovery to the litigation; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternate means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located. *Baycol Products Litig.*, 348 F. Supp. 2d 1058, 1059 (D. Minn. 2004) (citing *Aerospatiale*, 482 U.S. at 544 n. 28). Here, each factor weighs in favor of the Court issuing the Letter of Request for Mr. Min's testimony.

    A. **<u>Mr. Min's Testimony is Highly Relevant to Plaintiffs' Allegations.</u>**

11. The deposition testimony Plaintiffs seek is directly relevant to the prosecution of Plaintiffs' case on two issues: (1) LBHI's solvency and/or undercapitalization, and (2) JPMorgan's allegedly impermissible use of exclusive information about LBHI's financial condition to extract collateral from LBHI before it filed for bankruptcy.

    **(i)** *LBHI's Solvency and/or Capitalization*

6

12. The Amended Complaint alleges, *inter alia*, that JPMorgan used its positional leverage to coerce LBHI into posting collateral and signing a series of one-sided agreements at a time when LBHI was already insolvent and/or undercapitalized, and many of LBHI's subsidiaries were also insolvent. (Ex. B, Am. Compl. ¶¶ 29, 60, 66, 69.) Mr. Min's testimony will weigh directly on LBHI's financial condition and, therefore, is highly relevant to Plaintiffs' allegations.

13. Plaintiffs intend to question Mr. Min about KDB's pursuit of a potential transaction with Lehman, including its due diligence effort, potential deal structure and terms considered, negotiations and communications with Lehman and KDB's determinations regarding a potential Lehman transaction, including its ultimate conclusion not to pursue such a deal. Plaintiffs assert that Lehman's stock price dropped drastically following KDB's September 9, 2008 public announcement that it would not go forward with a Lehman deal. *See* Ex. C, Excerpted Report of Anton R. Valukas, Examiner, *In re Lehman Brothers Holdings Inc.*, Chap. 11 Case No. 08 B 13555 (JMP) (Bankr. S.D.N.Y. Mar. 11, 2010) ("Examiner's Report") at 686 ("Lehman's officers believe that KDB's disclosures had a strong downward impact on Lehman's stock."). Testimony from Mr. Min relating to KDB's consideration of a potential Lehman transaction is directly relevant to Lehman's financial condition at the time of the challenged transfers to JPMorgan. Mr. Min's testimony that KDB concluded before the public announcement that it would not pursue a transaction with Lehman will support Plaintiffs' allegations that LBHI was insolvent and/or undercapitalized before it made transfers and incurred obligations to JPMorgan.

14. Likewise, Mr. Min's testimony on KDB's due diligence on Lehman will tend to bear on its financial state. His testimony regarding the structure and terms of the potential

7

Lehman deal with KDB will reflect on the actual market value of Lehman's assets. Finally, to the extent that Mr. Min's testimony reveals that there was a divergence between the market's belief regarding KDB's intentions and KDB's actual intentions regarding a potential Lehman transaction, such testimony would tend to show that Lehman's publicly traded securities were overvalued.

      **(ii)** *JPMorgan's Access to Exclusive Knowledge about LBHI's Financial Condition*

15. Mr. Min's testimony may also be relevant to Plaintiffs' claims that JPMorgan used exclusive knowledge gained from KDB about Lehman's financial condition to demand additional collateral and require LBHI to sign agreements altering the Lehman-JPMorgan clearing relationship. Plaintiffs allege that JPMorgan touted its relationships with U.S. government regulators to gain an inside track on representing KDB in connection with its proposed investment in Lehman. (Ex. B, Am. Compl. ¶ 35.) Plaintiffs further assert that through its dialogue with KDB, JPMorgan's leadership learned before the public announcement that KDB would not complete a deal with Lehman, assisting JPMorgan in making its demands before Lehman descended further towards bankruptcy. (Ex. B, Am. Compl. ¶ 38.) Thus, Mr. Min's testimony about any communications between KDB and JPMorgan regarding the status of a KDB-Lehman deal will prove substantially relevant to Plaintiff's allegations.

16. As the Chairman and CEO of KDB during the period in which KBD was considering an investment in LBHI, Mr. Min is the best qualified—and perhaps the only qualified—witness to testify to (a) the nature, content, timing and extent of KDB's communications with LBHI regarding a proposed acquisition, investment, and/or other transaction, and the reasons for and timing of its failure; and (b) KDB's communications with

8

JPMorgan regarding its negotiations with LBHI. No other KDB witness has testified in this case, making Mr. Min's perspective highly relevant.

        B.    **The Letter of Request is Narrowly Tailored.**

17.    In accordance with Article 23 of the Hague Evidence Convention, Korea will not execute Letters of Request issued for the purpose of obtaining pre-trial document discovery, defined as any Letter of Request which requires a person either "to state what documents relevant to the proceedings to which the Letter of Request relates are, or have been, in his or her possession, custody or power," or "to produce any documents other than particular documents specified in the Letter of Request as being documents appearing to the requested court to be, or to be likely to be, in his or her possession, custody or power." *See* Republic of Korea, Declarations and Reservations, Hague Convention on Private International Law, http://www.hcch.net/index_en.php?act=status.comment&csid=1057&disp=resdn (last visited Dec. 22, 2011). Consistent with this reservation, the attached Letter of Request solely seeks Mr. Min's oral testimony, and does not request that Mr. Min, KDB, or any other Korean entity disclose relevant documents that have been in their possession, custody, or power; nor does it request that they produce such documents. Moreover, as outlined in the Letter of Request, Plaintiffs intend to question Mr. Min about only a limited set of issues to which his testimony will be relevant.

        C.    **Plaintiffs Seek Evidence that Originated in Substantial Part in the United States.**

18.    Mr. Min's testimony will cover KDB's communications with LBHI and JPMorgan, both U.S. banking corporations headquartered in New York, regarding KDB's proposed acquisition of LBHI. KDB was represented in its negotiations with LBHI by a U.S.-based legal firm and a U.S-based financial firm. Furthermore, some of Plaintiffs' questions for

9

Mr. Min will concern key negotiation meetings concerning a possible KDB acquisition of LBHI held in New York on or about August 5 and 6, 2008. *See* Ex. C., Examiner's Report at 675-76. Thus, a substantial part of the information Plaintiffs seek to learn from Mr. Min will have originated in the United States.

> D. **Plaintiffs Cannot Obtain Mr. Min's Testimony by Any Means Other than a Letter of Request.**

19. Because Mr. Min resides in the Republic of Korea, is a Korean national, and is, upon information and belief, neither domiciled nor doing business in the United States, he is beyond the reach of the Court's subpoena power. *See Mesto Minerals, Inc.*, 2007 WL 1875560 at *3; *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 254 F. Supp. 2d 469, 474 (D. Del. 2003) ("Resort to the Hague Evidence Convention in this instance is appropriate since both [witnesses] are not parties to the lawsuit, have not voluntarily subjected themselves to discovery, are citizens of the Netherlands, and are not otherwise subject to the jurisdiction of this Court."); *In re Baycol Products Litig.*, 384 F. Supp. 2d at 1060 (D. Minn. 2004) ("[R]esort to the Convention is the only means available to obtain the requested discovery from [the witness], as he is a foreign person that is not a party to this case, and who is not otherwise subject to the jurisdiction of this Court."). Indeed, the instant case presents the very circumstances the Hague Evidence Convention procedures were designed to address. Moreover, although the Convention permits depositions to be taken without a Letter of Request either (a) by way of a notice to appear before a consular officer (Art. 16), or (b) by way of designation of a private commissioner (Art. 17), the Republic of Korea has excluded within its territory the application of both Articles 16 and 17, permitting depositions to be taken without a Letter of Request *only* when the witness is a citizen of the requesting state (here, the United States). Thus, the Republic of Korea has foreclosed any and all methods of obtaining the compulsory or voluntary deposition testimony of

10

Korean third party witnesses like Mr. Min, *except* by means of a formal Letter of Request issued by a United States judicial authority. A Letter of Request remains Plaintiffs' only avenue to take Mr. Min's deposition.

### E. **Granting Plaintiffs' Request Will Not Compromise the Republic of Korea's Interests.**

20. For the reasons described in greater detail above, Plaintiffs anticipate that Mr. Min's testimony will be crucially material and consequential to Plaintiffs' case. Granting this Motion will enable the parties and the Court to have all relevant evidence before them as this case progresses toward further dispositive motion practice and trial. Moreover, Plaintiffs do not seek any information the disclosure of which would compromise the Republic of Korea's security.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Court enter an order substantially in the form attached hereto, issuing the Letter of Request annexed hereto as Exhibit A and awarding Plaintiffs such other, further relief as it deems appropriate.

Dated: December 23, 2011
New York, New York

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

By:   /s/ James Tecce

Andrew Rossman
James Tecce
Christopher Kercher
51 Madison Ave, 22nd Floor
New York, NY 10010
(212) 849-7000

John B. Quinn
Erica Taggart
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

*Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc.*

**CURTIS MALLET-PREVOST COLT & MOSLE LLP**

By:   /s/ Joseph D. Pizzurro

Joseph D. Pizzurro
L.P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney

Peter J. Behmke
Cindi Eilbott Giglio

*Counsel to Lehman Brothers Holdings Inc.*