# WACHTELL, LIPTON, ROSEN & KATZ
| | | | | |
|---|---|---|---|---|
| MARTIN LIPTON | JODI J. SCHWARTZ | | MARK GORDON | DAVID E. SHAPIRO |
| HERBERT M. WACHTELL | ADAM O. EMMERICH | 51 WEST 52ND STREET | JOSEPH D. LARSON | DAMIAN G. DIDDEN |
| LAWRENCE B. PEDOWITZ | GEORGE T. CONWAY III | NEW YORK, N.Y. 10019-6150 | LAWRENCE S. MAKOW | ANTE VUCIC |
| PAUL VIZCARRONDO, JR. | RALPH M. LEVENE | | JEANNEMARIE O'BRIEN | IAN BOCZKO |
| PETER C. HEIN | RICHARD G. MASON | TELEPHONE: (212) 403-1000 | WAYNE M. CARLIN | MATTHEW M. GUEST |
| HAROLD S. NOVIKOFF | MICHAEL J. SEGAL | | STEPHEN R. DiPRIMA | DAVID E. KAHAN |
| MEYER G. KOPLOW | DAVID M. SILK | FACSIMILE: (212) 403-2000 | NICHOLAS G. DEMMO | DAVID K. LAM |
| THEODORE N. MIRVIS | ROBIN PANOVKA | | IGOR KIRMAN | BENJAMIN M. ROTH |
| EDWARD D. HERLIHY | DAVID A. KATZ | GEORGE A. KATZ (1965-1989) | JONATHAN M. MOSES | JOSHUA A. FELTMAN |
| DANIEL A. NEFF | ILENE KNABLE GOTTS | JAMES H. FOGELSON (1967-1991) | T. EIKO STANGE | ELAINE P. GOLIN |
| ERIC M. ROTH | DAVID M. MURPHY | LEONARD M. ROSEN (1965-2014) | DAVID A. SCHWARTZ | EMIL A. KLEINHAUS |
| ANDREW R. BROWNSTEIN | JEFFREY M. WINTNER | | JOHN F. LYNCH | KARESSA L. CAIN |
| MICHAEL H. BYOWITZ | TREVOR S. NORWITZ | | WILLIAM SAVITT | RONALD C. CHEN |
| PAUL K. ROWE | BEN M. GERMANA | OF COUNSEL | ERIC M. ROSOF | GORDON S. MOODIE |
| MARC WOLINSKY | ANDREW J. NUSSBAUM | | MARTIN J.E. ARMS | DONGJU SONG |
| DAVID GRUENSTEIN | RACHELLE SILVERBERG | WILLIAM T. ALLEN — PHILIP MINDLIN | GREGORY E. OSTLING | BRADLEY R. WILSON |
| STEVEN A. ROSENBLUM | STEVEN A. COHEN | PETER C. CANELLOS — ROBERT M. MORGENTHAU | DAVID B. ANDERS | GRAHAM W. MELI |
| STEPHANIE J. SELIGMAN | DEBORAH L. PAUL | DAVID M. EINHORN — BERNARD W. NUSSBAUM | ANDREA K. WAHLQUIST | GREGORY E. PESSIN |
| JOHN F. SAVARESE | DAVID C. KARP | KENNETH B. FORREST — ERIC S. ROBINSON | ADAM J. SHAPIRO | CARRIE M. REILLY |
| SCOTT K. CHARLES | RICHARD K. KIM | THEODORE GEWERTZ — PATRICIA A. ROBINSON* | NELSON O. FITTS | MARK F. VEBLEN |
| DAVID S. NEILL | JOSHUA R. CAMMAKER | MAURA R. GROSSMAN — MICHAEL W. SCHWARTZ | JOSHUA M. HOLMES | |
| | | RICHARD D. KATCHER — ELLIOTT V. STEIN | | |
| | | THEODORE A. LEVINE — WARREN R. STERN | | |
| | | DOUGLAS K. MAYER — PATRICIA A. VLAHAKIS | | |
| | | ROBERT B. MAZUR — AMY R. WOLF | | |
| | | * ADMITTED IN THE DISTRICT OF COLUMBIA | | |

COUNSEL

| | |
|---|---|
| DAVID M. ADLERSTEIN | NANCY B. GREENBAUM |
| AMANDA K. ALLEXON | MARK A. KOENIG |
| LOUIS J. BARASH | J. AUSTIN LYONS |
| DIANNA CHEN | ALICIA C. McCARTHY |
| ANDREW J.H. CHEUNG | SABASTIAN V. NILES |
| PAMELA EHRENKRANZ | AMANDA N. PERSAUD |
| KATHRYN GETTLES-ATWA | JEFFREY A. WATIKER |
| PAULA N. GORDON | |

DIRECT DIAL: (212) 403-1208
DIRECT FAX: (212) 403-2208
E-MAIL: PVIZCARRONDO@WLRK.COM

July 17, 2014

**BY E-MAIL AND ECF**
Hon. Shelley C. Chapman
United States Bankruptcy Court
   for the Southern District of New York
One Bowling Green, Room 623
New York, NY 10004-1408

      Re: Lehman Brothers Holdings Inc., et al. v.
           JPMorgan Chase Bank, N.A., Adv. Proc. No. 10-03266

Dear Judge Chapman,

      We represent defendant JPMorgan Chase Bank, N.A. ("JPMorgan"). Dispositive motions in this case are due on August 15 under the Court's scheduling order (D.I. 236 at p. 3), and as described in more detail below, JPMorgan intends to move for summary judgment dismissing all remaining claims in the Amended Complaint. Plaintiffs have indicated that they intend to move for summary judgment on a number of claims as well. JPMorgan therefore respectfully requests a pre-motion conference under Local Bankruptcy Rule 7056-1(a) in advance of the August 15 motion deadline.[1]

---

[1] JPMorgan made a request to the District Court on June 17 for permission to file its summary judgment motion in that court, along with a renewed motion to withdraw the reference, as contemplated by Judge Sullivan's September 28, 2012, ruling on JPMorgan's previous motion to withdraw. *See Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 198 (S.D.N.Y. 2012). In the event JPMorgan's renewed motion to withdraw is granted, summary judgment motions will be heard in the District Court. As of the date of this letter, Judge Sullivan has not yet scheduled a pre-motion conference.

The Honorable Shelley C. Chapman
July 17, 2014
Page 2

Debtor Lehman Brothers Holdings Inc. ("LBHI," and with its subsidiaries, "Lehman") and its creditors' committee brought this action seeking, among other things, to strip JPMorgan of billions of dollars in collateral that LBHI provided to JPMorgan to secure the $100+ billion of credit that JPMorgan was extending each day to Lehman entities. Plaintiffs also seek billions of dollars in consequential damages based on the fantastical theory that if JPMorgan had not requested this collateral, then Lehman would have been able to stave off bankruptcy and engage in unprecedented transactions to generate more value for creditors.

Ultimately, plaintiffs' claims boil down to two central contentions: (i) that JPMorgan was contractually obligated to extend credit to Lehman and was contractually barred from conditioning future extensions of credit upon the receipt of additional collateral, and (ii) that JPMorgan acted "illegally," "[il]legitimately," and "improper[ly]" when it obtained collateral to ensure that the multibillion-dollar loans it would make to Lehman would be secured. Am. Compl. ¶¶ 8, 64, 80. Once these contentions are debunked, plaintiffs' case dissolves.

JPMorgan's requests for collateral were made during the days leading up to the worst financial collapse since the Great Depression. It cannot be disputed that during the week of September 8, 2008, there were grave concerns about Lehman's ability to survive. It also cannot be disputed that during that week, JPMorgan was providing Lehman with more than $100 billion in credit each day, the majority of which financed the daily repurchase by LBI (Lehman's U.S. broker-dealer subsidiary) of securities that LBI sold every night in the triparty repo market, and that JPMorgan was also providing billions of dollars a day in additional unsecured credit that facilitated other Lehman operations. JPMorgan continued making multibillion-dollar daily loans to LBI even after LBHI filed for bankruptcy and it became widely known that LBI's liquidation was imminent.

The premise underlying many of plaintiffs' claims is that JPMorgan was *obligated* to continue to extend tens of billions of dollars of credit to Lehman, even as the financial markets melted down, and even though the extensions of credit were made at JPMorgan's discretion and on a demand basis. From this, plaintiffs urge that JPMorgan acted unlawfully when it allegedly made "threats" to cease these enormous advances absent further credit support.

Each of plaintiffs' numerous claims based on this theory rises and falls on a contractual question, ripe for review on summary judgment: did the parties' operative contract, the 2000 Clearance Agreement, obligate JPMorgan to extend credit? It is plain from the face of the agreement that it did not. To the contrary, the Clearance Agreement does not contain a single word of obligation or commitment to extend credit. Indeed, the Clearance Agreement is not a loan agreement at all, but rather is what its name implies — an agreement for the provision of clearance services, in connection with which JPMorgan had the right to choose to make credit available to Lehman, or not. The Clearance Agreement thus repeatedly states that the decision whether to make credit available was entirely at JPMorgan's discretion, and that any extension of credit JPMorgan did choose to make would be subject to immediate repayment upon demand. As will be demonstrated in JPMorgan's motion, therefore, claims premised on allegations that JPMorgan could not cease extending credit and that its requests for collateral were improper present no triable issues of fact and judgment should be granted in favor of JPMorgan as a matter of law. *See, e.g., Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 131 (S.D.N.Y. 2013) (summary judgment appropriate in contract action where agreement is unambiguous).

The Honorable Shelley C. Chapman
July 17, 2014
Page 3

      Plaintiffs' other predominant theme is that JPMorgan acted wrongfully in obtaining collateral for its daily advances to Lehman because doing so allowed JPMorgan to be preferred over unsecured creditors. *See* Am. Compl. ¶ 1 (alleging that "the purpose of these last-minute maneuvers was to leapfrog JPMorgan over other creditors"). The claims based on this contention are nothing more than preference claims dressed up in inflammatory language. But all claims brought under Bankruptcy Code section 547, as well as related fraudulent transfer claims under sections 544 and 548(a)(1)(B), were dismissed by Judge Peck as barred by the safe harbor of section 546(e). *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 469 B.R. 415, 451 (Bankr. S.D.N.Y. 2012).

      Lacking those statutory bases on which to recover from JPMorgan, plaintiffs instead are pursuing a host of ill-fitting legal theories that constitute back-door challenges to the same transfers that were the subject of the now-dismissed avoidance claims. Their remaining causes of action range from claims for breach of the implied covenant of good faith and fair dealing, to claims of coercion and duress, to claims of actual-intent fraudulent transfer under the Bankruptcy Code. In support of these claims — which, unlike the dismissed avoidance claims, require proof of conscious misbehavior — plaintiffs lean heavily on incendiary assertions that JPMorgan acted improperly in seeking to protect itself as Lehman, a borrower of more than $100 billion each day, experienced a dramatic financial decline. But acting upon the goal of being adequately secured to protect its own stakeholders is not wrongdoing. Even more so, it was not wrongful in this case, where the collateral at issue was requested to protect JPMorgan's massive extensions of *new* credit each day, including the week following the bankruptcy filing of LBHI. As JPMorgan intends to demonstrate in its motion, even after an exhaustive investigation by a court-appointed examiner that resulted in a 2000-plus page report, and even after four years of nearly boundless discovery in this case, plaintiffs have utterly failed to adduce evidence of actual wrongdoing that would be required to support the claims that remain in the case.

      \*   \*   \*   \*   \*   \*

      JPMorgan is available for a pre-motion conference to discuss summary judgment motions at the Court's convenience.

Respectfully submitted,

*/s/ Paul Vizcarrondo*
Paul Vizcarrondo, Jr.

CC:   Joseph D. Pizzurro, Esq.
       Andrew Rossman, Esq.